## Sipes *versus* Mann.

*Assignments of Error, when not considered in this Court.—Power of Widow over Property taken under the Exemption Laws.*

Where a case brought for review to the Supreme Court, is not properly one for an appeal, and there was no bill of exceptions to the objectionable testimony on the trial, this court will not consider an assignment of error, which is dependent upon the testimony for its validity.

Land which has been appraised and set apart to the widow and children of a decedent, under the Act of 1851, may be sold by her, and her conveyance therefor will pass the title to the purchaser.

ERROR to the Common Pleas of *Fulton county*.

This was an action of ejectment, brought July 18th 1860, by David Mann against Sarah Sipes, for a tract of land in Licking Creek township, containing about 70 acres.

Abner Sipes, the husband of defendant, died seised of this land—his widow elected to take it under the provisions of the Act of Assembly of April 14th 1851. Appraisers were appointed, who valued the property at $300, and set it apart by metes and bounds, for the use of the widow and family, which consisted of four minor children.

On the 20th of October 1859, Mrs. Sipes entered into articles of agreement for the sale of this land to the plaintiff for $275; the deed for which, was to be delivered on the 1st day of April 1860. Part of the purchase-money was paid before the 1st of April, on which day Mann tendered the balance, and demanded a deed and possession, which Mrs. Sipes refused. This suit was then brought, as above stated. On leave given, the plaintiff paid into court the balance of the purchase-money, $69.75.

The defence in the court below rested upon two points:

1. That the circumstances were not such as ought to move the conscience of a chancellor to exercise his extraordinary power of enforcing a contract; but that the plaintiff's true remedy was an action of covenant for the recovery of damages for the violation of the agreement.

2. That this real estate having been taken by the defendant, under the Act of the 14th of April, A. D. 1851, for the benefit

of herself and family, she was, *in part, at least*, a trustee for her four minor children, and could not alienate the property during their minority.

The court below (KIMMELL, P. J.) charged, " That if there was an agreement between the parties, and the plaintiff had complied, or offered to comply, with it on his part, it was a valid agreement, which could be enforced in this action." Her mental capacity (which was denied on the trial) was commented on and submitted to the jury. There was a verdict and judgment in favour of the plaintiff; whereupon the defendant sued out this writ, averring, 1. That the court below erred in that portion of the charge which related to the mental capacity of the defendant; and 2. In not charging, as was requested, that the widow held the property in trust for herself and children, and had, therefore, no right to sell it.

*Geo. A. Smith* and *W. Reilly*, for plaintiff in error.

*John Cessna*, for defendant in error.

The opinion of the court was delivered, May 6th 1861, by

THOMPSON, J.—1. We cannot consider the first assignment of error. Its validity is dependent on the testimony, and that is not legally before us. It is not a case for an appeal, and there is no bill of exception which reaches it; and as these are the only modes by which testimony can be brought here, we must dismiss the exception.

2. The second error is to the charge of the court on the question of the interest which a widow or children have in property exempted by the Act of 1851.

The act provides as follows:—" Hereafter the widow or the children of any decedent dying within this Commonwealth, testate or intestate, may retain either real or personal property belonging to said estate to the value of $300, and the same shall not be sold, but suffered to remain for use of the widow and family."

In this case there was a widow and children, and the widow elected to take real estate under the act. After a time she contracted to sell it, but subsequently refused to carry out her contract, alleging that she had no power to transmit a fee simple by bargain and sale. The purchaser having tendered compliance on his part, brought ejectment for the land, and recovered; and the widow has removed the case to this court for review.

This is the first time the point has been directly presented to this court for adjudication.

It might be sufficient, for the affirmance of this judgment, to hold, what is too obvious for dispute, that the widow bargained for the sale of her interest at least, in the land, and as this cer-

[Sipes *v.* Mann.]

tainly included a right of possession, the plaintiff would, at all events, be entitled to recover that from her; but as this view is hardly sufficient for the case, we proceed to state our opinion of her rights and powers under the statute.

We have, in numerous cases, spoken of the provision in the act as intended for the maintenance and support of the decedent's family, so that one bereavement should not be followed by another—the loss of the means of subsistence. But this has been mostly in cases where the exempt property was personal. But the statute makes no discrimination between real and personal property: they are alike devoted to the same purposes, and we are not authorized, we think, to distinguish between them.

Can both or either be sold, if necessary to effectuate the intention of the legislature? We have no doubt but they may. The proceeds of the property are not *alone* appropriated to the object; the property itself is to "remain for the use of the widow and family." The use is not limited by any words or implication, and evidently import unlimited use to the purpose to which it is to be devoted by the appraisement, and setting apart by the executor or administrator. They belong to the family of the decedent, in full property, and may be so used by them. If this were not so, the object of the provision would often, if not always, be fruitless. If the property is to be held in trust, and only the proceeds applied, the interest of $300 would be of very little moment in the support of a family; and it is not likely that any use could be made of personal property that would make it produce more. If retained and used by the family, it would necessarily be consumed, or worn out in the use, and be thus as effectually appropriated as if sold. It has not been doubted, I believe, by the profession, but that personal estate might be sold by the parties entitled to retain it out of the estate, and I see no difference in the terms of investiture and use between real and personal estate; and if there be not, why shall there be any in the title? This is not easy to answer. Indeed, there may be a greater necessity to sell land retained than personalty. It may be totally unproductive, and useless, and a source of expense on account of accrued and accruing taxes. Under such circumstances, how could it be of any the slightest aid to the decedent's family, unless sold, and the proceeds used? Where there is a widow and children, the retention is by the widow, and the appraisement is to her. The law, therefore, vests title in her, and she may sell. She is intrusted with the property, and its faithful application, without other guaranty than that arising from self-interest and affection for her children. Hence, no technical trust is created, no bonds required for the faithful administration of the property, and no settlement, about

[Sipes *v.* Mann.]

the property needed. It is a pure gratuity by force of law, for the benefit of the decedent's family, and may be so enjoyed. We have, therefore, no doubt that the widow, in this instance, had the right to sell the land in question, and the power to convey it in fee simple.

The words relied on as establishing a trust, have no operation on the language of the exemption. They apply only to the officers of the law, whose duty it is to administer the estate. The words, therefore, in the last clause of the section, which require that the property "shall not be sold, but suffered to remain for the use of the widow and family" of the decedent, have no operation in the direction insisted on by the defendant in error. They only restrain the officers charged with the administration of the estate.

By the Act of 1859, the widow or children may elect to receive the amount of the exemption in money, bills, &c. There is no limitation of the use to be made of the money; it must, therefore, be intended to go, as money usually does, to the use of the family *in solido*, and not merely the interest to be obtained from it. These acts, the Widows' Acts of 1851 and 1859, are in *pari materiâ*, and so to be construed; and if aid were needed to construe the former, the latter shows very clearly that the interest in the exempt property, money, for instance, is to be an entire and full ownership, with an unlimited right of disposition in those entitled to claim it.

For these reasons, the judgment of the Court of Common Pleas is

Affirmed.